Good morning, Your Honors. This case is about copyright infringement action, what's pending. And in the middle of the case, even when there was depositions going on, the defendant, One Step Up, continued to sell the same garments behind the scenes. And we asked specifically the same question about, because we found at least one garment that was not disclosed, that was sold by Melrose Store. So you knew before you signed the settlement agreement that their numbers didn't add up and that they had sold to, you say, at least one retailer that wasn't disclosed by them? So the excerpt, Volume No. 3, page 379, is an excerpt from the deposition transcript. I'm asking about Exhibit 7 of that deposition notice, which is a picture of the garment, same shape, sold by Melrose Store, which was customer of One Step Up. So I asked that question that was in the middle of the case, March 30th, 2016. And answer to that question was, do you recognize this? And then answer was, I've never seen this, my first time seeing this. But you had evidence at that time that that wasn't accurate, right, that in fact they had sold? We were misled. You know, that was what we are saying to be fraud. And then we, after that deposition, I asked to the counsels and the defendant representative One Step Up, double check. And they did double check. And they wrote me an e-mail that stated, like, sometime in April in the same year, 2016, they are also exhibits to the same, our opposition in the case. But you knew when you got it that it wasn't correct, right? So they confirmed they did not sell it. So which was why we had to think about new action anyways, because of this. So that was, you know, taken care of later. But sometime later, another garment was found by, sold by, I think, to my recollection, it was one of those, like, retailers, like Burlington was. And then that was, so those two garments became the basis for this action with the case number 383. Well, you knew that the inventory figure that they gave you was inaccurate, that they had actually sold some product after May 15th, technically in violation of the settlement agreement, which you were just ready to sign. You knew that. And despite that fact, you went forward and signed the agreement knowing that those figures were incorrect, right? Is that what happened? That's not what it is. So like I said, we served interrogatories. And we were answered and verified on the penalty of perjury by one step-up. I asked the same question about this specific garment we found in the middle of the case. And he denied. And I asked double-checking. And there was a confirmation in the e-mail denying it again. So, I mean, sometimes another guy may copy the same thing again. Or sometimes they are even using someone else's label or someone else's audit number. So that based on the representations given on the penalty of perjury multiple times from one step-up, my conclusion had to be, you know, that's not coming from them. So it should be a separate action. Counsel, you filed your new lawsuit against Walmart about a month after the settlement agreement was signed? Yes, Your Honor, because I was, you know, did not want to take care of this like simultaneously. We were busy because of this case. You didn't want to file the lawsuit before you signed the settlement agreement? I cannot get it. Never mind. Go ahead. I wanted to just, yeah. Go ahead. The settlement agreement unto itself had the figure of 18,400 offending items. Yes. Some of those, most of those were already sold. Some of those were listed as inventory. You basically, in the settlement agreement, said to the other side they could go ahead and sell all of the offending items that they have in their possession. So tell me, why does it make a difference whether the inventory figure was at 2,560, I think that's what it was, or maybe it was a little less, in which case it's all 18,400. There's no dispute, I don't think, that that's the number of offending items. And the other side had the ability to sell it, so who cares whether they had sold it in advance or they still had it in their inventory. So that's, in other words, what's the damage? Yes. Well, that was very successful. Exactly. So the answer would be, you know, about this like, about 2,000 units or 1,800 units, you know, $10 for each, that's not a big deal. Maybe 10, 20 more thousands. But when it becomes a willful infringement that was sold, those same number of units was sold without knowledge about infringement versus pending action. That's a classic example of willful infringement. For a six-month period in the middle of the case, in spite of confirmations I asked on the penalty of perjury four times, March 30, 2016, was the end of pretty much almost like six months. So following up on Judge Sessions' question, what evidence did you put before the district court of your damages flowing from the breach of representations and warranties that you've alleged? Before the district court, what was the evidence and where in the record is it? Right. So whatever the confirmations given on the penalty of perjury, relying on that, we did calculation. I mean, it's so reasonable. We did the profit calculations for disgorgement of profits based on which we settled the case. And the settlement calculation, especially in the dynamics of, like, you know, chance of winning, it was so obvious we were going to get willful infringement. But counsel, the district court said you didn't present any evidence of damages, right? That's what the district court said. And so my question is, why is the district court wrong? Can you give me a record site as to where you presented evidence to the district court of your damages from the breach of representations and warranties claim? Is there a place in the record you can point me to? Sure. I mean, all these evidence is directing us fraudulently towards the disgorgement of profit calculation versus what has actually happened. That pretty clearly explaining and proving willful infringement. The dynamics of the settlement discussion would have been different. That's the classic example or definition of the materiality. Like, you had you known the truth, your decision would have been different. Your argument about willful would be better if you had not known, in fact, that there was an inaccurate representation by the other side as to what was in their inventory as opposed to what had been sold. But you knew at that time that there was a problem in their reporting. And at the same time, you decided to sign a settlement agreement. And to what extent are you waiving any damages claims that you may be entitled to by showing a willful violation? So then you can get statutory damages of up to, what, $150,000? I mean, how have you waived that? Yes. So the thing is they confirmed so many times. So there was still representation on the record even on the penalty of perjury. So we did settle relying on that. So that representation in Section 2 of settlement does not say anything about Melrose Store that we presented as an Exhibit 7 of deposition and other sales either. So what theoretically is the damage caused by them selling the infringing garments before the settlement versus after the settlement, which they were allowed to do? What is the damage? So the gross profits and then the settlement discussion, that was based on, like I said, a disclosure of profits. But when you permitted them to do it, how are you damaged? Is there some qualitative difference in the timing of the sale? Yes, Your Honor. So the case has been pending more than a year. And the same, about the same size of case, which is another next case we are going to be discussing, judge issued about $125,000 attorney fees. All these were considered together. But if it was wafer infringement plus that amount of attorney fees, settlement amount would have been a lot more, a lot higher. So that's very obvious to me. Yes, Your Honor. All right. Thank you, Counselor. Thank you. May it please the Court. My name is Harlan Lazarus. I'm the attorneys for the appellees. Unless the Court has other questions for me, the only thing I would like to highlight is that, among other representations that the appellant made in the settlement agreement, is that they had no knowledge of any other infringing garments. And as we've just heard, frankly, for just about the first time, it is conceded that the bait and switch or the laying in wait, the trap that the appellant attempted to create for One Step Up was a deliberate act on the part of the appellant. And as otherwise we have heard, the garments have always been fully accounted for. The mistake was only as to the itemization of who bought it and when they bought it. Nothing else for the Court this morning. All right. Thank you, Counselor. I have about 20 seconds left. You do. You have 15 seconds. 1,800 units for disgorgement of profits versus 1,800 units for willful infringement. Damage amount is different. Any reasonable person would have settled that same case for different amounts. So that's the last point I just wanted to highlight. Thank you. Thank you very much. Neiman Brothers v. One Step Up is submitted.
judges: Wardlaw, Sessions, Bennett